**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Clover Leaf Farm Condominium, | Civil No. 18-2838 (DWF/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Country Mutual Insurance Company, | |
| Defendant. | |

Amanda K. Linden, Esq., Smith Jadin Johnson, PLLC, and Timothy D. Johnson, Esq., Roeder Smith Johnson, PLLC, counsel for Plaintiff.

Blake Phillip DeRosier, Esq., Leatha G. Wolter, Esq., and M. Gregory Simpson, Esq., Meagher and Geer, PLLP, counsel for Defendant.

**INTRODUCTION**

Plaintiff Clover Leaf Farm Condominium ("Clover Leaf"), a common interest community comprised of 13 residential condominiums, sustained hail damage to its condominiums' exteriors. Clover Leaf submitted a claim to its insurer, Defendant Country Mutual Insurance Company ("Country"), but the parties were unable to agree upon the amount and scope of the condominiums' repairs. They elected to resolve the dispute through a binding appraisal ("Appraisal"). The appraisal panel issued an award ("Award"), however the parties dispute the scope of the Award. The Court now considers Clover Leaf's Motion to Confirm Appraisal Award and for Partial Summary

Judgment (Doc. No. 14 ("Clover Leaf Motion")), and Country's Motion for Summary Judgment (Doc. No. 16).

For the reasons discussed below, the Court grants the Clover Leaf Motion to the extent it seeks to remand the Award to the appraisal panel for clarification, and denies Country's Motion for Summary Judgment.

## BACKGROUND

Clover Leaf consists of 13 residential condominiums (the "Property") located in Anoka County, Minnesota. (Doc. No. 18 ("Clover Leaf Memo.") at 1.) The Property was insured under a policy ("Policy") issued by Country. (Doc. No. 1, Ex. A ("Compl.") ¶ 4.) On or about June 11, 2017, the Property was damaged by a hail storm (the "Loss"). (*Id.* ¶ 5.) Clover Leaf notified Country of the Loss and made a claim for damages on June 12, 2018. (Doc. No. 8 ("Stip." ¶ 4.) Country investigated the Loss to create an estimate of the cost to repair the Property. (Doc. No. 20 ("Country Memo.") at 4.)

On July 19, 2017, Country issued four actual cash value ("ACV") payments to Clover Leaf totaling $370,728.79.[1] (Doc. No. 25 ("Elliot Decl.") ¶ 5, Ex. A.) On September 11, 2017, Country issued three RCV payments totaling $183,764.02 after roof repairs were completed.[2] (*Id.* ¶ 6, Ex. B; Country Memo. at 4-5.) For the next several

---

[1] ACV is a term that represents what property is worth in money after deducting depreciation. (*See* Country Memo. at 2.) In contrast, replacement cost value ("RCV") reflects what property is worth in money without deducting depreciation. (*Id.*)

[2] The Policy specified that Country would pay for replacement costs only after the damaged property was actually repaired or replaced.[2] (Doc. No. 5 ("Answer"), Ex. 1 ("Policy") at 99.)

months, Clover Leaf and Country disagreed on the amount and scope of remaining repairs. (Country Memo. at 5.) Each party relied on a competing estimate to support its position. (*See* Elliot Decl. ¶¶ 8-9, Ex. D ("Country Estimate"), Ex E. ("Clover Leaf Estimate").) The Country Estimate calculated that the ACV and RCV to restore the Property was $736,320.99 and $893,395.61, respectively. (*See* Country Estimate.) The Clover Leaf Estimate calculated that the RCV was $1,388,907.86; it did not calculate an ACV. (*See* Clover Leaf Estimate.) Both estimates were comprehensive with respect to the repairs necessary to restore the Property. (*See generally* Country Estimate and Clover Leaf Estimate.)

In early 2018, Clover Leaf submitted a written demand for appraisal pursuant to the Policy's appraisal provision.[3] (Clover Leaf Memo. at 3; Country Memo. at 5.) The provision provides:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire . . . . The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Policy at 97.) Country and Clover Leaf dispute whether they reached an agreement with respect to several categories of damages prior to the appraisal. (Compl. ¶ 11; Elliot Decl. ¶ 19.) Country contends that it gave its appraiser the entire Country Estimate without

---

[3] While the parties dispute the exact date of the demand for appraisal, it does not impact the Court's analysis.

instructions to exclude certain items because the parties had not agreed to do so.[4] (Elliot Decl. ¶ 19.) Clover Leaf argues that the parties were in agreement with respect to everything except the cost of siding.[5] (Compl. ¶ 7.)

The appraisal occurred on June 15, 2018. (Stip. ¶ 4.) The appraisal panel issued an Award which provided an ACV amount of $416,000 and an RCV amount of $520,000. (Elliot Decl. ¶ 20, Ex. O ("Award").) The panel specified that the award did not include the cost to repair roof coverings because the work had already been completed and payment issued. (*Id.*) Clover Leaf argues that the Award applies only to siding. (Compl. ¶ 13.) Country argues that the Award encompasses all aspects of the Loss except the roof coverings. (Doc. No. 28 ("Country Opp.") at 2.) Each party

---

[4] Country contends that it tried several times to clarify the disputed items that Clover Leaf wished to appraise but ultimately failed to reach an agreement. (Country Memo. at 6-7; Elliot Decl. ¶¶ 10-11, 14-18, Exs. F-G, J-N.)

[5] Clover Leaf claims that overhead and profit were also in dispute, however, and argues that the Award applies only to siding because the Award Amount was based on multiplying the price per square of siding by the number of siding squares required to repair the Property. (Clover Leaf Memo. at 3 ¶ 9, 4 ¶ 14.) Clover Leaf contends that the price per square was $650, and that roughly 8,000 squares were required. (Clover Leaf Memo. at 4 ¶ 14.) The Court observes that $650 multiplied by 8,000 equals $5,200,000, however the RCV Award amount was only $520,000. While the Court recognizes there was some error in calculation, the error does not affect the Court's analysis.

requests the Court to confirm the Award according to its interpretation. (Compl. ¶¶ 22-29.)

Clover Leaf argues that because siding was the only issue in dispute, no other issues were appraisable.[6] (Clover Leaf Memo. at 9) (citing Minn. Stat. § 65A.01, subd. 3, to support that only disputed amounts go before the appraisal panel). Clover Leaf contends that Country specifically acknowledged the limited scope of the dispute. (Clover Leaf Memo. at 12.) It cites a correspondence dated April 26, 2018 where Country stated, "Country objects to an appraisal of loss regarding the amount of loss associated with the cost to repair the buildings' siding . . . Country further objects to an appraisal of loss regarding the amount of overhead and profit associated with repairs made to the buildings' roofs." (Linden Decl. ¶ 6, Ex. 5 ("Response to Demand" at 1-2).)

Country argues that the Response to Demand did not define or characterize the scope of Clover Leaf's appraisal demand, but simply memorialized and preserved specific objections to the appraisal of certain items that were within the scope of Clover Leaf's broader demand for appraisal. (Country Opp. at 10.) Country argues that the Response to Demand made this clear when it stated: "[T]his letter is not intended as a

---

[6] Clover Leaf alleges that it had an agreement with Country that the following repairs ("Non-Included Items") were not in dispute and therefore not included in the Award: (1) Roofing ($405,153.21); (2) Cleaning ($434.50); (3) General Demolition ($14,613.38); (4) Doors ($48,097.23); (5) Heavy Equipment ($65); (6) Permits & Fees ($4,758); (7) HVAC ($11,170.94); (8) Light Fixtures ($83.62); (9) Painting ($4,386.04); (10) Soffit, Fascia, & Gutters ($34,783.63); (11) Windows ($370.92); and (12) Window Glazing and Repair ($10,077.11). (Linden Decl. ¶¶ 6-8.)

5

comprehensive recitation of all issues and defenses that may exist." (Response to Demand at 2.)

Country argues further that any purported agreement to exclude the Non-Included Items is negated by Clover Leaf's repeated reference to the entire Clover Leaf Estimate when Country asked to clarify the dispute. (Country Memo. at 11; *see* Elliot Decl. Exs. H-I.) Clover Leaf contends that the references Country cites are incomplete and that the agreement is supported by other e-mails and telephone conversations. (Doc. No. 33 ("Clover Leaf Opp.") at 8.)

Ultimately, Clover Leaf claims that Country has failed to pay either the Award or the agreed upon amount of $128,840.37 for the Non-Included Items ("Count I"). (Compl. ¶¶ 15-21.) Clover Leaf also seeks declaratory judgment: (1) confirming the Award pursuant to Minn. Stat. § 572B.22 and declaring that it covers only the cost of siding ("Count II"); and (2) awarding pre-award interest on the Award under Minn. Stat. § 549.09 ("Count III"). (*Id.* ¶¶ 22-30.) Alternatively, Clover Leaf asks the Court to remand the Award to the appraisal panel for clarification or to vacate the award pursuant to Minn. Stat. §§ 572B.20, 572B.23, respectively. (Clover Leaf Motion.) Clover Leaf also seeks attorney fees and costs. (Compl. at 5 ¶ 4.)

Country counter claims that it has satisfied all of its obligations under the Award and the Policy because it has already paid Clover Leaf $824,564.37.[7] (Answer at 7 ¶ 19.) It seeks declaratory judgment accordingly and asks that the Court further declare that

---

[7] One week after the Award, Country issued four additional payments to Clover Leaf totaling $270,071.56. (Elliot Decl. ¶ 21 , Ex. P.)

6

Country is not obligated to pay Clover Leaf any additional amounts as alleged in Clover Leaf's Complaint. (*Id.*) Country opposes vacating the Award or remanding it to the appraisal panel for clarification. (Doc. No. 28 ("Country Opp.") at 27-30.)

## DISCUSSION

I. **Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.     Analysis**

"The Minnesota Uniform Arbitration Act applies to the review and confirmation of appraisal awards in insurance disputes." *Herll v. Auto-Owners Inc. Co.*, 879 F.3d 293, 295 (8th Cir. 2018). If the award is ambiguous, the Court may submit the matter to the arbiters to clarify the award. *See* Minn. Stat. § 572B.20(d)(3); *see also Hilltop Constr., Inc., v. Lou Park Apartments*, 324 N.W.2d 236, 240 (Minn. 1982) (resubmitting award to appraisal panel for clarification on ambiguity). An award is ambiguous if it is "reasonably susceptible of more than one interpretation." *Herll*, 879 F.3d at 296 (citing *Art Goebel Inc., v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 15 (Minn. 1997). A reviewing court is "prohibited from ignoring the ambiguity and summarily confirming the award." *Herll*, 879 F.3d at 296 (internal citation omitted).

Country argues that it is inappropriate to remand the award to the appraisal panel for clarification because the Award is unambiguous and definite. (Country Opp. at 28.) Country contends that the plain language of the Award clearly indicates that it constituted a total valuation of the Loss:

> We have carefully examined any data and or property we deemed needed to reach a valuation as hereinbefore specified, in accordance with the foregoing appointment, and have determined based on the scope of the covered, disputed items the total values and loss for the claim . . . . Amounts represents [sic] total valuation for claims listed. Difference between ACV and RCV is awarded at completion of repairs. The panel is aware that the roof coverings for all 13 buildings has [sic] been replaced prior to the appraisal. Payment for the roof coverings has already been made and the work completed, thus, the roof coverings are not included for consideration as part of this appraisal.

8

(Award at 1.)  Country argues that because the Award indicates only that its "total valuation" does not include roof-related costs, the plain language contradicts Clover Leaf's claim that additional items were excluded from the appraisal.  (*See* Country Opp. at 29.)  Country argues further that the record corroborates the Award's unambiguous language because there is nothing to support Clover Leaf's assertion that there was an agreement to exclude the Non-Included Items from the appraisal.  (*Id.* at 30.)

The Court disagrees.  While the Award indicates a total valuation of the "disputed items," it does not specify what the "disputed items" are.  The Court finds that the Award is ambiguous because it is "reasonably susceptible of more than one interpretation."  *Herll*, 879 F.3d at 296 (citing *Art Goebel Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 15 (Minn. 1997)).  The crux of the entire lawsuit is premised on each party's interpretation of what the Award means, and the record is replete with justification for each interpretation.

Under these circumstances, "the correct action for the court is not to weigh the merits under the law but instead to resubmit the award to the arbitrator's bargained-for construction of the facts and decision under the contract."  *Herll,* 879 F.3d at 296 (internal citation omitted).  The Court grants Clover Leaf's Motion to the extent it seeks to remand the Award to the appraisal panel for clarification.  Consequently, the Court need not address vacating the Award, or confirming it in favor of either parties' interpretation.  Clover Leaf's related claims are also premature at this time.

## CONCLUSION

The Court grants Clover' Leaf's Motion to Confirm Appraisal Award and for Partial Summary Judgment to the extent it seeks to remand the Award to the Appraisal panel for clarification. It denies Clover Leaf's motion in all other respects, and denies Country's Motion for Summary Judgment in its entirety.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Plaintiff Clover Leaf's Motion to Confirm Appraisal Award and for Partial Summary Judgment (Doc. No. [14]) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The motion is granted to the extent it seeks to remand the Award to the appraisal panel to clarify the Award's parameters.

    b. The motion is denied in all other respects.

2. Defendant Country Mutual Insurance Company's Motion for Summary Judgment (Doc. No. [16]) is **DENIED** in its entirety.

Dated: March 4, 2019
                                              s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge